IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD BOOTH, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:23-CV-02148-K-BN |
| | § | |
| U.S. BANK, N.A., | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and Special Order No. 3-354, this case is
referred to the undersigned United States magistrate judge for pretrial management,
which includes making findings and a recommended disposition when appropriate.
(*See* Dkt. No. 25.)  Before the Court is a motion for summary judgment filed on June
17, 2024, by Defendant U.S. Bank, N.A. ("USB").  (Dkt. No. 19.)  The motion is
accompanied by a supporting brief (Dkt. No. 20 ("Dft. Br.")) and appendix (Dkt.
No. 21 ("App.")).  For the reasons stated below, the motion (Dkt. No. 19) should be
**GRANTED**.

**BACKGROUND**

On July 28, 2023, Plaintiff Richard Booth filed a lawsuit against USB in the
191st District Court of Dallas County, seeking to prevent foreclosure on the property
located at 486 Fenwick Drive, Sunnyvale, Texas 75182 ("Property").   (*See* Dkt. No.
1-4 (the "Complaint") ("Compl.")).)  Booth asserted claims for violation of Texas
Property Code § 51.002, negligent misrepresentation, and breach of contract, and

requested a temporary restraining order ("TRO") to prevent the sale of the Property, which was scheduled for foreclosure sale on August 1, 2023. (*See id*.) On July 31, 2023, the state court entered an ex parte TRO, and the foreclosure sale scheduled for August 1, 2023 did not occur. (*See* Dkt. No. 1-5.) USB filed an answer in the state court on September 25, 2023 (Dkt. No. 1-8) and removed the lawsuit to this Court the following day. (*See* Dkt. No. 1.)

On or about August 18, 2008, Plaintiff and his wife obtained a loan in the original principal amount of $342,159.00, to purchase the Property. (*See* Dft. Br. at 4; *see also* Dkt. No. 21-2, App. 006-009 ("Note") and Dkt. No. 21-3, App. 010-026 ("Deed of Trust") (collectively "Loan"); Dkt. No. 21-2, App. 001-005 (Declaration of Janet Gioello ("Gioello Decl.") at ¶ 5).) USB is the current assignee of the Loan. (*See* Dft. Br. at 5; *see also* Compl. at 2; Gioello Decl. at ¶ 6.) Booth is in default of the Loan, as the Loan remains due for the June 1, 2010 payment, and no payments have been made since that time. (*See* Dft. Br. at 5; Gioello Decl. at ¶ 8.)

In his efforts to prevent or delay foreclosure on the Property, Booth has filed eight bankruptcy cases, each of which was dismissed without issuance of a discharge order (*see* Dft. Br. at 6, n. 8 (citing App. 074-163)), and one of which was dismissed with prejudice for serial filing (*see* Dft. Br. at 6, n. 9 (citing App. 152-156)). Booth has also filed three lawsuits prior to the instant lawsuit, all seeking to prevent foreclosure. (*See* Dft. Br. at 6-8 (citing App. 165-206).)

Plaintiff and his wife filed the first lawsuit, *Richard Booth and Shelly Booth v. Caliber Home Loans, Inc.*, Case No. DC-18-05551, in the 298th District Court, Dallas County, Texas (the "First Lawsuit"), on April 27, 2018, seeking to prevent a foreclosure sale scheduled for May 1, 2018. (*See* App. 165-167.) Plaintiffs nonsuited all claims without prejudice, and on December 31, 2018, the state court entered an Order of Non-Suit. (*See* App. 179-184.) Plaintiff filed the second lawsuit, *Richard Booth v. U.S. Bank, N.A.*, Cause No. DC-20-01707, in the 44th District Court, Dallas County, Texas (the "Second Lawsuit"), on January 30, 2020, seeking to prevent a foreclosure sale scheduled February 4, 2020. (*See* App. 186-200.) Plaintiff again nonsuited all claims, but this time with prejudice, and the state court entered an order to that effect on May 28, 2020. (*See* App. 201-203, 204-206.) Plaintiff filed his third lawsuit, *Richard Booth v. Fay Servicing LLC and U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust*, Cause No. CC-22-01644-E, in the County Court at Law No. 5, Dallas County, Texas (the "Third Lawsuit"), on April 4, 2022, seeking to prevent a foreclosure sale scheduled for April 5, 2022. (*See* App. 209-225.) Plaintiff again nonsuited his claims without prejudice, and the state court signed an order dismissing the Third Lawsuit without prejudice on June 1, 2023. (*See* App. 228-229, 232.)

Turning to the present lawsuit, Magistrate Judge David Horan, to whom this case was originally referred, issued an Initial Scheduling Order (Dkt. No. 10) on October 13, 2023, setting forth (among other things) the following deadlines:

3

amended pleadings due by December 1, 2023; discovery completed by May 1, 2024; and dispositive motions due by June 17, 2024. (*See id.*) On December 4, 2023, Judge Horan granted USB's unopposed motion to extend the deadline to amend pleadings to December 15, 2023, after which USB filed an amended answer. (*See* Dkt. Nos. 16, 17, 18.) After USB filed the present motion for summary judgment (Dkt. No. 21), Judge Horan issued a Supplemental Scheduling Order, specifically outlining deadlines relevant to the motion (Dkt. No. 23). Booth was ordered to file a written response to the motion by July 17, 2024. (*See id.* at 1.) Booth—who is represented by counsel—has failed to respond to USB's motion in any way. And he has not sought an extension of time to file a response. Therefore, the Court may consider the motion ripe and ready for determination.

## LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by

demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing Fed. R. Civ. P. 56(e); *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991)).

The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, No. 3:15-CV-1326-L, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary-judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

When a nonmoving party does not file any response to a motion for summary judgment, the "failure to respond does not permit the court to enter a 'default'

summary judgment." *Boyd v. Fam. Dollar Stores of Texas, LLC*, No. 3:22-CV-1368-D, 2023 WL 4141052, at *1 (N.D. Tex. June 22, 2023). But the Court is permitted to accept the moving party's evidence as undisputed. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990). "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).

Booth's failure to effectively respond means that he has not designated specific facts showing that there is a genuine issue for trial on any of his claims. Here, the pleadings are not verified, and because Booth has presented no summary judgment evidence, the Court is allowed to accept USB's facts as undisputed. *See Estate of Newton ex rel. Newton v. Grandstaff*, No. 3:10-CV-809-L, 2012 WL 3013929, at *2 (N.D. Tex. July 20, 2012). And "a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Bryan v. Cano*, No. 22-50035, 2022 WL 16756388, at *4 (5th Cir. Nov. 8, 2022) (cleaned up); *accord Bustos v. Martini Club Inc.*, 599 F.3d 458, 468-69 (5th Cir. 2010) (although "a district court may not grant a motion for summary judgment merely because it is unopposed," "[t]he defendants submitted competent summary judgment evidence showing that there were no genuine issues of fact for trial," and the plaintiff "did not respond to the motion for summary judgment in the district court and therefore failed to carry his burden of showing that material factual

issues existed" and so "cannot now assert that the district court's reliance on defendants' uncontested evidence was improper" (cleaned up)); *Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-CV-517-D, 2020 WL 3317096, at *6 (N.D. Tex. June 18, 2020).

## ANALYSIS

USB seeks summary judgment based on res judicata; Booth's assertion of non-existent claims under the Texas Property Code; his failure to properly plead his claims for breach of contract and negligent misrepresentation; and his deemed admissions.  (*See* Dft. Br. at 1, 11-22.)  USB also seeks summary judgment on Booth's request for declaratory and injunctive relief.  (*See id*. at 22-23.)  USB further argues that Booth's request for request for attorney's fees should be denied.  (*See id*. at 23.)  Finally, USB argues that Booth should be barred from filing additional lawsuits relating to the Property or any scheduled foreclosure sale of the Property.  (*See id*. at 24.)  As noted previously, Booth has not responded to USB's motion for summary judgment in any way—despite being represented by counsel and having been directed to do so (*see* Dkt. No. 23).

## I.    Booth's deemed admissions are fatal to his claims.

On March 29, 2024, USB served on Booth's counsel "Defendant's Discovery Requests . . . via email and first-class mail[.]"  (*See* Dft. Br. at 8; *see also* Dkt. No. 21-7, App. 038-040 (Declaration of Vincent J. Hess ("Hess Decl.")) at ¶¶ 3-4; Dkt. No. 21-8, App. 042 (transmittal letter); Dkt. No. 21-10, App. 046-060 (Defendant's

Discovery Requests); Dkt. No. 21- 11, App. 062 (receipt for email service).)   Booth

failed to respond to Defendant's Discovery Requests, including the Requests for

Admission ("RFA") contained therein.  (*See* Hess Decl. at ¶ 7.)  Consequently,

argues USB, the matters set forth in the RFA are deemed admitted by operation of

the law under Rule 36(a)(3) and conclusively established under Rule 36(b).  (*See* Dft.

Br. at 9 (citing Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days

after being served, the party to whom the request is directed serves on the requesting

party a written answer or objection addressed to the matter and signed by the party

or its attorney."); Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is

conclusively established[.]").)

Pursuant to Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure,

"admissions are proper summary judgment evidence that can be used to show that

there is an absence of a genuine issue of material fact."  *See Dingler v. Equifax Info.*

*Servs., L.L.C.*, No. 3:12-CV-455-M-BF, 2014 WL 1317511, at *3 (N.D. Tex. Feb. 28,

2014), *report and rec. adopted*, No. 3:12-CV-455-M-BF, 2014 WL 1325574 (N.D. Tex.

Mar. 31, 2014) (citing Fed. R. Civ. P. 56(c)(1)(A)); *Estate of Newton v. Grandstaff*, No.

3:10-CV-809-L, 2013 WL 230252, at *3 (N.D. Tex. Jan. 18, 2013).  "[D]eemed

admissions under Rule 36 can disprove allegations in a plaintiff's complaint."

*Dingler*, 2014 WL 1317511, at *3 (citing *Franklin v. BAC Home Loans Servicing, L.P.*,

No. 3:10-CV-1174-M, 2012 WL 2679496, at *5 (N.D. Tex. June 6, 2012));

*Cushingberry v. Airtran Airways, Inc.*, No. 3:04-CV-2301-M, 2005 WL 1875429, at *1-2

(N.D. Tex. Aug. 9, 2005).  "The movant can satisfy its initial summary judgment

burden by offering deemed admissions that rebut the plaintiff's claims." *Dingler*, 2014 WL 1317511, at *3 (citing *Franklin*, 2012 WL 2679496, at *5). "A plaintiff cannot present the court with evidence that contradicts his deemed admissions to create a genuine issue of material fact at the summary judgment stage." *Dingler*, 2014 WL 1317511, at *3 (citing *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001)).

Booth has admitted, among other things, that the instant lawsuit should be dismissed with prejudice; that he has no evidence of damages; and that he is not entitled to any damages or compensation. (*See* RFA Nos. 27, 28, App. 060; RFA Nos. 4, 5, 9, 25, 26, App. 057-060.)

These admissions, standing alone, are fatal to Booth's claims for breach of contract and negligent representation, and provide a sufficient ground for granting USB's motion for summary judgment. *See e.g., McCully v. Stephenville Indep. Sch. Dist.*, No. 4:13-CV-702-A, 2014 WL 4060255, at *3 (N.D. Tex. Aug. 14, 2014). While recognizing the "potential harshness" of granting summary judgment on the basis of default admissions, the Fifth Circuit has emphasized that compliance with the rules of procedure is "necessary to ensure the orderly disposition of cases." *In re Carney*, 258 F.3d at 421 (quoting *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987)); *see also Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548-49 (5th Cir. 1985); *Le v. Cheesecake Factory Rests.*, No. 06-20006, 2007 WL 715260, at *4 (5th Cir. 2007). For this reason alone, Booth's claims for breach of contract and negligent representation should be dismissed with prejudice. Upon review of the relevant

9

pleadings and evidence presented, the Court finds that Booth's claims also fail for additional reasons.

## II.    Booth's claims are barred by res judicata.

"Claim preclusion, or pure res judicata, is the venerable legal canon that [e]nsures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994) (citation and internal quotations omitted). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (citation and quotations omitted). For res judicata to apply, four conditions must be satisfied: (1) the parties to both actions are identical, or in privity; (2) a court of competent jurisdiction rendered the judgment in the first action; (3) the first action concluded with a final judgment on the merits; and (4) both suits involved the same claim or cause of action. *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004) (citation omitted).

All four conditions are satisfied here. First, as noted above, Booth has already engaged in the three prior lawsuits concerning the Property. (*See* App. 165-157, 186-200, 201-203, 204-206.) Although the First and Third Lawsuits were nonsuited by Booth and dismissed without prejudice, the Second Lawsuit establishes the first three elements of res judicata. (*See* App. 186-200, 201-203, 205-206.) The parties to the present lawsuit are the same as the parties to the Second Lawsuit, satisfying the first

element.  (*Compare* App. 189 *with* Compl. at 2-4.)  The Second Lawsuit concluded

with a final judgment on the merits by a court of competent jurisdiction, satisfying

the second and third elements.  (*See* App. 202, 205.)

Regarding the fourth condition, the Fifth Circuit uses the transactional test to

determine whether two suits involve the same claim or cause of action.  *See United

States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007).  This test requires the district

court to consider whether the two cases are based on "the same nucleus of operative

facts."  *Id*. (citation and quotations omitted).  "The nucleus of operative facts, rather

than the type of relief requested, substantive theories advanced, or types of rights

asserted, defines the claim."  *Id*. (citation omitted).  If both cases are based on the

same nucleus of operative facts, "the prior judgment's preclusive effect extends to all

rights the original plaintiff had with respect to all or any part of the transaction, or

series of connected transactions, out of which the original action arose."  (*Id*.

(citation and internal quotations omitted).)

Here, Booth's claims in the present lawsuit arise from the same common

nucleus of operative facts as those raised in the Second Lawsuit.  (*See* App. 190-194

(¶¶ 11–12, 15–16, 22–23, 25, 32; Compl. at 2-4.)  Both lawsuits involve allegations

against USB premised on allegedly defective or improper pre-foreclosure notices, and

on purported misrepresentations during unspecified conversations relating to loss

mitigation options.  (*See id*.)  In both lawsuits, Booth cites the same HUD regulations

without explaining how they were allegedly violated or how they are pertinent to his

claims.  (*See id*.)  Also in both lawsuits, Booth contends that the allegations support

11

injunctive relief precluding a scheduled foreclosure sale, and he asserts similar causes of action for negligent misrepresentation, violation of Texas Property Code § 51.002, and breach of contract.  (*See id*.)  Because all the elements of res judicata are satisfied, Booth's claims in the instant lawsuit are barred by res judicata.  *See Oreck Direct*, 560 F.3d at 404 (affirming dismissal of claims based on res judicata); *see also Nguyen v. Bank of Am., N.A.*, 539 F. App'x 325, 328 (5th Cir. 2013).

## III.  Booth's claim for violation of the Texas Property Code fails.

Booth also alleges violation of "Texas Property Code 51.0002."  (*See* Compl. at 3.)  Specifically, Booth alleges that he "received a defective notice of default and an improper notice of acceleration of the note as required by . . . the property code." (*See id*.)  Because the Texas Property Code does not have a Section 51.0002, the Court assumes that Booth intended to cite Texas Property Code § 51.002, which concerns the sale of real property under a contract lien.  *See* Tex. Prop. Code § 51.002, *et seq.*

Plaintiff's claim fails as a matter of law because § 51.002 of the Texas Property Code does not provide a private right of action.  *See Flores v. PennyMac Loan Servs.*, LLC, No. 3:18-CV-00924-GBT, 2019 WL 4720977, at *5 (N.D. Tex. Sept. 4, 2019) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 569 (Tex. 2001) ("Section 51.002 establishes the procedures for conducting a foreclosure sale.")), *report and rec. adopted*, 2019 WL 4691621 (N.D. Tex. Sept. 25, 2019).  Various federal courts in Texas likewise have held that § 51.002 does not otherwise provide for an

independent cause of action.  *See, e.g., Ashton v. BAC Home Loans Servicing, L.P.*, No. 4:13-CV-810, 2013 WL 3807756, at *4 (S.D. Tex. July 19, 2013) ("This Court has not found any cases that interpret section 51.002 to establish an independent right of action for damages. The section also does not contain its own enforcement mechanism."); *Solis v. U.S. Bank, N.A.*, No. CV H-16-00661, 2017 WL 4479957, at *2 (S.D. Tex. June 23, 2017) ("Section 51.002 of the Texas Property Code, however, does not provide a private right of action." (citations omitted)), *aff'd*, 726 F. App'x 221 (5th Cir. 2018); *Anderson v. CitiMortgage, Inc.*, No. 4:13CV369, 2014 WL 2983366, at *5 (E.D. Tex. July 2, 2014) (citation omitted) ("Under Texas law, there is no independent cause of action for breach of section 51.002.").

Based on the summary judgment evidence, including Booth's admissions, there was no defect in the proceedings for the foreclosure sale scheduled for August 1, 2023.  (*See* Dft. Br. at 15; RFA Nos. 14-16, 20-21, 24, App. 058-059.)  And in any event, the foreclosure sale did not occur.  (*See* TRO; *see also* RFA Nos. 10, 19, App. 058-059; Gioello Decl. ¶ 9, App. 005.)  As such, Booth cannot "state a viable claim for wrongful foreclosure" because he "never lost possession of the Property."  *See Foster v. Deutsche Bank Nat'l Tr. Co.*, 848 F.3d 403, 407 (5th Cir. 2017) (citing *James v. Wells Fargo Bank, N.A.*, 533 Fed. Appx. 444, 446 (5th Cir. 2013) (unpublished)); *see also Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1007-08 (S.D. Tex. 2011) ("[B]ecause recovery is premised upon one's lack of possession of real property, individuals never losing possession of the property cannot recover on a theory of wrongful foreclosure.  As such, courts in Texas do not recognize an action for

attempted wrongful foreclosure.").  Because the foreclosure of the Property has not

taken place, Booth may not assert a cause of action for wrongful foreclosure.

Accordingly, USB is entitled to summary judgment on Booth's claim asserted under

the Texas Property Code.

## IV.    Booth's claim for breach of contract fails.

Booth next asserts a claim for breach of contract.  (*See* Compl. at 3.)  USB

argues that summary judgment is warranted because: (1) no HUD regulations are

incorporated into the Deed of Trust; (2) Booth failed to identify the specific

provisions he alleges were breached; and he failed to show that he incurred any

damages from the alleged breach.  (*See* Dft. Brf. at 16-17.)

To succeed on a breach of contract claim under Texas law, a plaintiff must

show "(1) the existence of a valid contract; (2) performance or tendered performance

by the plaintiff; (3) breach of contract by defendant; and (4) damages sustained by the

plaintiff as a result of the breach."  *Sport Supply Grp., Inc. v. Columbia Casualty Co.*, 335

F.3d 453, 465 (5th Cir. 2003).  Booth alleges that USB failed to follow the provisions

of "HUD regulations" "24 CFR 203.501, 24 CFR 203.604(b); and 24 CFR 605."

(*See* Compl. at 3.)

First, Booth's reliance on HUD regulations to support his claim for breach of

contract is unavailing.  *See* <u>Johnson v. World Alliance Finan. Corp.</u>, 830 F.3d 192, 196

(5th Cir. 2016) ("HUD regulations do not give the borrower a private cause of action

unless the regulations are expressly incorporated into the lender-borrower

agreement.").  Here, Booth merely cites the regulations but fails to describe the

alleged violation of each regulation. (*See id*.) Furthermore, Booth does not allege that the HUD regulations cited in his Complaint are incorporated into the Deed of Trust. (*See* Compl. at 3.) Indeed, the Deed of Trust (App. 011-026) does not even mention the HUD regulations cited by Booth—or any other HUD regulations— which is fatal to Booth's claim. *Margolis v. James B. Nutter & Co.*, 808 F. App'x 230, 233 (5th Cir. 2020) (affirming dismissal with prejudice where the regulations were not expressly incorporated into the loan agreement); *Johnson*, 830 F.3d at 196 (affirming summary judgment on breach of contract claim where plaintiff borrower failed to show the parties intended to incorporate into the loan agreement the specific HUD term at issue).

Next, Booth's failure to identify any specific contract or provision of a contract that was allegedly breached is fatal to his claim. To plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) (citing *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011)); *see also Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 492 (N.D. Tex. 2022) ("It is well-settled within this circuit that the plaintiff must plead which provision of the contract the defendant violated."); *Bayway Servs., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("A petition in an action based on a contract must contain a short statement of the cause of action

sufficient to give fair notice of the claim involved, including . . . the substance of the contract which supports the pleader's right to recover." (internal citation omitted)).

Here, the Complaint only includes a conclusory allegation that USB breached "loan documents" without any further detail. (*See* Compl. at 2.)  Because Booth failed to identify the provisions purportedly breached, a breach of contract claim has not been stated, and, consequently, the claim should be dismissed.  *See Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 244 (5th Cir. 2015) (affirming dismissal of breach of contract claim where plaintiff did not specify which provision in the deed of trust was breached); *Coleman v. Bank of Am., N.A.*, No. 3-11-CV-0430-G-BD, 2011 WL 2516169, at *1 (N.D. Tex. May 27, 2011) (citing *Case Corp. Inc. v. Hi-Class Bus. Sys. of Am.*, 184 S.W.3d 760, 769-70 (Tex. App.—Dallas 2005, pet. denied)) (same).  Accordingly, summary judgment should be granted on Booth's claim for breach of contract.

Booth has also failed to adequately allege that USB's purported breach caused him to incur damages.  Booth broadly asserts that he is "requesting actual damages, attorney fees and costs of court," (*see* Cmplt. at 3), but he fails to identify what those damages are.  Damage is an essential element of a breach-of-contract claim.  *See Nucor Corp. v. Requenez*, 578 F. Supp. 3d 873, 922-23 n.416 (S.D. Tex. 2022).  Nor does Booth show the required causal connection.  Plaintiff must first plead that the alleged injury was "the natural, probable, and foreseeable consequence of the defendant's conduct."  *Mead v. Johnson Grp.*, 615 S.W.2d 685, 687 (Tex. 1981) (citation omitted).  "The absence of this causal connection between the alleged

breach and the alleged damages will preclude recovery." *Prudential Secs., Inc. v. Haughland*, 973 S.W.2d 394, 397 (Tex. App.—El Paso 1998, pet. denied) (citation omitted).  Thus, this is an additional reason that Booth has failed to sufficiently plead a claim for breach of contract.

Finally, Booth admitted both a lack of damages and a lack of evidence of damages.  (*See* RFA Nos. 4, 25, 28, App. 057, 059-060.)  Accordingly, Booth has not pleaded any facts that would allow the Court to conclude that he suffered damages as a result of USB's alleged breach.  Moreover, Booth failed to allege that he was current on his payments (*see generally* Compl.), and, in fact, he admitted that he was in default of the Loan (*see* RFA Nos. 1-3, 12, 17-18, 22, App. 057-059)—yet another reason that Booth has failed to sufficiently plead his breach of contract claim. *Williams*, 560 F. App'x at 238 ("[I]f, as here, plaintiffs fail to allege they were current on their payments under the deed of trust, dismissal of their breach of contract claim is proper.") (citing *Marsh v. JPMorgan Chase Bank, N.A.*, 888 F. Supp. 2d 805, 815 (W.D.Tex.2012)).

For all these reasons, summary judgment should be granted as to Booth's breach of contract claim.

## V.    Booth's negligent misrepresentation claim fails.

Booth's negligent misrepresentation claim fails for similar reasons.  Booth contends that USB "made misrepresentations in communicating to [Booth] the options of loss mitigation."  (*See* Compl. at 2.)  Booth's Complaint contains conclusory allegations with no factual allegations to support his negligent

misrepresentation claim. (*See id.*) As such, his pleading is fatally defective. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (A plaintiff must plead facts with enough specificity "to raise a right to relief above the speculative level."); *see also Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) ("[A] complaint, which contains a bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice.").

To state a claim for negligent misrepresentation, a plaintiff must allege that: (1) the defendant made a representation in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Flo Trend Systems, Inc. v. Allwaste, Inc.*, 948 S.W.2d 4, 8 (Tex. App.—Houston [14th Dist.] 1997, no writ); *see also Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005).

Because the alleged misrepresentation by USB was not made for the guidance of Booth in his business, his claim fails. *See Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415, at *7-8 (N.D. Tex. Sept. 7, 2010) (disposing of a negligent misrepresentation claim *sua sponte* because, among other reasons, there was no evidence that "the information was supplied for guidance of others in their business"); *Ayres v. Parker*, No. SA-12-CV-621, 2013 WL 3929711, at *14 (W.D. Tex. July 29, 2013) (rejecting negligent misrepresentation claim because plaintiffs failed to

18

show representations were made for guidance in their business); *see also Flo Trend*, 948 S.W.2d at 8 (describing negligent misrepresentation as a "commercial tort"). Moreover, Booth's admissions are fatal to his claim. He has admitted that USB did not make any misrepresentation to him and that any alleged misrepresentation did not concern guidance for a business. (*See* RFA Nos. 6, 13, App. 057-058.) He has also admitted that he has no evidence of any negligent misrepresentation. (*See id.*) Consequently, Booth failed to state a viable claim for negligent misrepresentation.

In addition, under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 930 (N.D. Tex. 2014) (quoting *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex.2007)). As the Texas Supreme Court explained: "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 618 (Tex. 1986); *see also Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.")).

A party can establish a tort claim related to a contractual setting when he furnishes proof that a "duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718

(Tex. 2014).  Because Booth does not allege any facts to support the existence of a legal duty owed to him outside the contractual obligations under the Loan, his negligent representation claim is "merely a repackaged breach of contract claim," which is barred by the economic loss rule.  *See Johnson*, 999 F. Supp. 2d at 930-31; *see also Jim Walter Homes*, 711 S.W.2d at 618 (Under Texas law, "'the failure to perform the terms of a contract is a breach of contract, not a tort.'").

Accordingly, Booth's negligent misrepresentation claim is fatally defective, and summary judgment should be granted in favor of USB.

## VI.  Booth is not entitled to any declaratory relief, injunctive relief, or recovery of attorney's fees.

To the extent Booth seeks declaratory relief, such relief is remedial in nature and dependent upon the assertion of viable causes of action—which Booth has not asserted here.  *See Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-71 (5th Cir. 1990).  Because Booth has stated no legal basis for—nor provided evidence of— any viable causes of action, summary judgment should be granted in favor of USB.  *See Guajardo v. JPMorgan Chase Bank, N.A.*, 605 F. App'x 240, 250 (5th Cir. 2015) ("Plaintiffs have failed to state any other valid claim for relief. Because a declaratory judgment is 'remedial in nature,' where all of plaintiff's causes of action are dismissed, a related declaratory judgment claim should also be dismissed.").

To the extent Booth seeks injunctive relief, presumably to prohibit USB from foreclosing or attempting to foreclose on the Property, Booth is similarly not entitled

to such relief.  "A request for injunctive relief under Texas law is not in and of itself a cause of action, but instead necessarily depends on an underlying cause of action." *Beacham v. Bank of Am., N.A.*, No. 3:12-CV-00801-G-BF, 2012 WL 2358299, at *5 (N.D. Tex. May 25, 2012), *report and rec. adopted*, 2012 WL 2362619 (N.D. Tex. June 21, 2012).  To assert a request for injunctive relief, a plaintiff is required to show, among other things, "a substantial likelihood of success on the merits."  *Anderson v. CitiMortgage*, No. 4:10-CV-398, 2011 WL 1113494, at *7 (E.D. Tex. Mar. 24, 2011). Because Booth has not asserted any viable claims in this lawsuit, and he has no evidence of any viable claims, he cannot show a substantial likelihood of success on the merits.  In addition, Booth admits he is not entitled to injunctive relief.  (*See* RFA No. 9, App. 058.)  Therefore, Booth is not entitled to any injunctive relief, and summary judgment should be granted.

Similarly, Booth's request for attorney's fees fails because Booth has not pleaded any viable causes of action that would allow for recovery of attorney's fees. *See Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 377 (5th Cir. 2021) (affirming district court's judgment denying attorney's fees where recovery of fees were premised on an unviable claim); *see also Billiter v. Cent. Mortg. Co.*, No. CIV.A.H-14-663, 2015 WL 867443, at *7 (S.D. Tex. Feb. 17, 2015) ("Here, as Plaintiff has no viable claims against Defendant, Plaintiff cannot . . . obtain attorney's fees as a prevailing party.").  In addition, Booth admits he is not entitled to attorney's fees. (*See* RFA Nos. 5, 26, App. 057, 060.)  Accordingly, Booth is not entitled to recovery of attorney's fees, and summary judgment should be granted.

21

## VII. Booth's repeated filing of baseless lawsuits warrants a pre-suit injunction.

USB argues that Booth is "purposely abusing the judicial system to harm and prejudice [USB] by repeatedly filing lawsuits and bankruptcy cases containing the same baseless allegations in order to delay both paying on the Loan and the inevitable foreclosure of the Property." (*See* Dft. Brf. at 24.)  USB further argues that Booth's filings "have been so numerous and meritless that a pre-filing injunction against [him] is warranted to prevent him from further abusing legal process." (*See id*.)  Therefore, USB requests the Court enjoin Booth from "filing any action against [USB] or its servicer arising out of the Property and/or the scheduled foreclosure sale of the Property" without first "seek[ing] leave of the court in which the new action is sought to be filed and provid[ing] a copy of this Court's injunction ruling to such court." (*See id*.)  USB futher requests the scope of such injunction to include all United States district courts and all United States bankruptcy courts, as well as state court actions, given that Booth has filed all four lawsuits in state court.  (*See id*.)

The All Writs Act authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  This Act permits federal courts "to enjoin litigants who are abusing the court system by harassing their opponents." *See Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980).  "[I]t is widely accepted that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions without permission from the court." *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002);

*see also Baum v. Blue Moon Ventures, L.L.C.*, 513 F.3d 181, 187 (5th Cir. 2008);

*Babineaux v. Wells Fargo Bank, N.A., as Trustee*, Case No. 4:23-CV-01563, 2023 WL

9508094, at *14 (S.D. Tex. Nov. 29, 2023), *adopted*, 2024 WL 406776 (S.D. Tex.

February 2, 2024).

> The propriety of such a pre-suit injunction depends on several factors:
>
> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits;
>
> (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass;
>
> (3) the extent of the burden on the courts and other parties resulting from the party's filings; and
>
> (4) the adequacy of alternative sanctions.

*Baum*, 513 F.3d at 189 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818

(4th Cir. 2004)).  In addition, a pre-suit injunction "should be tailored to protect the

courts and to preserve the litigant's legitimate right to present nonfrivolous claims."

*Staten v. Harrison Cnty.*, No. 20-60329, 2021 WL 5766576, at *3 (5th Cir. Dec. 3,

2021).

Booth's litigation history strongly supports a finding that he qualifies as a

vexatious litigant who has abused the judicial system.  Booth has repeatedly and

improperly utilized judicial proceedings to thwart the lender's attempt to foreclose

based on the borrower's default of a lending agreement.  Despite making no

payments on the promissory note since at least prior to June 1, 2010 (*see* Gioello

Decl. ¶ 8, App. 004-005), Booth has filed eight bankruptcy actions beginning in 2011

23

and four state court lawsuits beginning in 2018 (including the instant lawsuit), each time to stop foreclosure.  (*See* App. 074-163, 164-232.).  As noted above, each of Booth's bankruptcy cases was dismissed without issuance of a discharge order (*see* App. 074-163), and one was dismissed with prejudice for serial filing (*see* App. 152-156.)

Of the three prior state court lawsuits, the First and Third Lawsuits were nonsuited and dismissed without prejudice, and the Second Lawsuit was nonsuited and dismissed with prejudice.  (*See* App. 179-184, 201-203, 204-206, 228-229, 232.) Furthermore, Booth has failed to comply with this Court's scheduling orders, failed to respond to USB's discovery requests, and failed to respond in any way to the motion for summary judgment currently before the Court.  His complete failure to prosecute the lawsuit he filed corroborates that Booth is a vexation and abusive litigant.  Thus, the first three *Baum* factors clearly support a pre-filing injunction. Regarding the fourth factor, because Booth has demonstrated a pattern of delaying foreclosure by obtaining ex parte temporary restraining orders in state court, an injunction against state court filings is warranted in this case, and alternative measures are likely inadequate.  *See Newby*, 302 F.3d at 299–303.

Accordingly, the undersigned finds that Booth—and any person acting at his behest—should be enjoined from filing future suits concerning the Note, the Deed of Trust, or foreclosure of the Property, whether in federal or state court, and whether against USB or any person or entity in privity with USB, without obtaining that courts prior permission.

24

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that USB's motion for summary judgment (Dkt. No. 19) be **GRANTED**, and Richard Booth's claims should be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that Richard Booth, as well as any persons acting on his behalf or in concert with him, should be **ENJOINED** from filing, in any state court in Texas or federal court in Texas or elsewhere, any further lawsuits concerning the Note, the Deed of Trust, or foreclosure of the Property, against USB, its mortgage servicer, their attorneys, or any party in privity with USB, unless Richard Booth first obtains permission from the court where he wishes to file the suit. When seeking that permission, Booth must provide a copy of this Memorandum and Recommendation and any subsequent order adopting it.

**SO RECOMMENDED** on October 1, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).